May it please the court, my name is Maile Hirota and I represent the petitioner Anna Peng. I would like to reserve two minutes for rebuttal if necessary. Help us keep track of your time. Thank you. Petitioner Anna Peng is a 35-year-old native of China and she's been married to the same man for 15 years. This is an immigration case where the couple has two U.S. citizen children ages 9 and 10. They both immigrated legally to the United States. Now the immigration judge had denied Ms. Peng's application for asylum and withholding of removal and she appealed it to the board. Now at issue in this case are, in addition to the board's denial of her appeal, it's denial of her two motions. One was a motion to remand and the second was a motion to reconsider. And both were, a petition for review was filed for both decisions and they were consolidated by this court. Now petitioner sees three main issues in this case. The first two we believe have been briefed so I'd like to focus on the third. The first two being the ineffective assistance of her former counsel. And the second being the BIA's error in denying. Let me ask you one question about that, though. There's an argument here that a petitioner failed to comply with the strict requirements of Matter of Lozada. Are there circumstances in which if there's a problem that's obvious on the face of the record where Matter of Lozada need not be complied with in its strictest sense? Yes, Your Honor, that is our position. And how do we decide whether we have one of those cases in front of us? What are the criteria that we should apply? If it is clear on the record that the petitioner was not afforded effective assistance of counsel, that the counsel's errors were gross and clear on the face of the record. What case do you rely on and what were the facts of this case that would allow you to take that approach under what case law of the Ninth Circuit? My reading of the record, tell me if I'm wrong. I may have missed something. I understand that there was just a bold statement made in the petition to reopen if the conditions of Lozada were met. Well, then you're saying if it appears on the record that it was ineffective, then you don't have to deal with Lozada. I'm having a little hard time with that. I'd like you to explain what the facts were of this case and what the law is and how it applies so that we can say, well, there's no problem with Lozada here. When you say the facts of this case, you mean the petitioner's case? Of course. The petitioner's case was that her counsel at the trial level was not prepared, that he conceded the issue of removability really without consulting her, without her knowledge. It wasn't translated on the record when he conceded that it was a crime involving moral turpitude and that she was removable for that issue. I understand what you're saying. I don't want to interrupt you. I want you to keep going, but I want you to elaborate on that. Isn't that the fact of every one of these ineffective assistance? In other words, in every ineffective assistance, the Ethnicity Council did such and such, but Lozada goes a little farther. Lozada requires that requirement of the attorney being notified, because if not, we would just accept what they say and then you'd go to the next step. Now, bring me to the next step then. Why don't you have to comply with notifying counsel, having counsel have a chance to respond and go through the notification of the bar and that sort of thing? Well, in fact, in this case, Your Honor, the former counsel was notified and a complaint was filed with the State Board. Is that evidence in the record? No, it's not. So we have nothing in the record to that effect. So if the formalities of Lozada have not been complied with, then how do we go to the next step under your argument? The next step would be that it shows from the face of the record how ineffective, in fact, he was. And what case law in the Ninth Circuit would you cite for us that would allow us then to ignore the formalities of Lozada? There's a case, Rodriguez-Larez v. INS, that was cited in our reply brief, that it is a denial of underdue process if the proceeding was so fundamentally unfair that the alien was reasonably prevented from presenting his case and that the Lozada factors are intended to ensure that adequate factual record exists for the ineffective assistance and that the Lozada factors are not rigidly applied. Okay. Just give me the name of the case again, please. It is Rodriguez-Larez, L-A-R-I-Z, v. INS. Thank you. Thank you. There's also Castillo-Perez from 2000, which is the same thing. Thank you. I would cite some additional cases for that. But what I am troubled by is that we've said at least three times that I'm aware that Lozada is not sacrosanct, but it's hard to, for me at least, to find a common thread in those cases and figure out when it's rigidly applied and when it isn't. And that's what I was asking for your help with. Well, Your Honor, the fact is that the record shows how ineffective this former counsel's representation was and that she was prejudiced. What's the prejudice here? Well, the prejudice was that her asylum application was filed the day before the hearing. The judge did not have an adequate chance to review the asylum application. In addition, he treated his client as a hostile witness. He didn't call key witnesses. He didn't submit any evidence. But the BIA has found that there would be no exercise of discretion even if she was otherwise qualified for asylum because of her conviction. That is what the judge held, yes. And if that's the case, then what's the prejudice? In other words, if there's no there there, won't she get to the end of the road? Well, asylum is a discretionary grant, yes. But in this particular case, her counsel, throughout the record, there are many cases where you can see how upset the judge was at the counsel for having failed. He filed the asylum application a month late. So are you suggesting then that the exercise of discretion was made because the judge was upset with the lawyer? Well, I don't think I would go so far as to say that it was made because of the lawyer, but certainly it may have been. It might have been because she had a conviction. She was convicted of defrauding the INS itself. Yes, that's true. And that might be powerful evidence that the BIA might take into account in choosing to deny, as a matter of discretion, her application for asylum. How do we get around that problem? Well, the conviction was she didn't even receive any jail time for her conviction, and she was only given probation. It wasn't a particularly serious conviction, at least as far as the district court was concerned. All right. So is BIA entitled to rely on that, or as a matter of law, are they prevented from relying on that? Well, part of our position is that it may not even be a crime involving moral turpitude in the first place, and that it was error to have admitted that. So that if it's not a crime involving moral turpitude, she wouldn't even be removable. Tell me why it's not a crime involving moral turpitude. There is a Board of Immigration Appeals case, Matter of Espinoza, which was cited in our reply brief, which says that someone indicted for abetting a non-immigrant visitor to make a false and fraudulent statement is not a crime involving moral turpitude. In this case, she did not make any fraudulent statements to the immigration service. She was merely pointing to questions, to answers or questions on a citizenship exam. So the case that the government relies on— Did Espinoza involve the possibility of a criminal sentence? Did it involve a prosecution by the U.S. Attorney's Office? I don't know, Your Honor. Actually, I can see I only have one minute remaining. You may save that for a rebuttal if you'd like. We'll hear from the government. Good morning. May it please the Court, Jan Redfern. I represent the respondent, the Attorney General. In this case, the petitioner was convicted in the United States District Court for the District of Hawaii of the felony offense of conspiracy to defraud the Immigration and Naturalization Service. She was convicted under 18 U.S. Courts Section 371, is that right? Yes, Your Honor. What is your position with respect to whether this case is distinguishable from the Goldstein— I'm not sure if I'm pronouncing it right—the Goldstein or Goldestein case from 1993 in which, applying the categorical approach, we held that a conviction under this section for structuring a transaction to avoid currency reporting requirements was not a crime involving moral turpitude? Yes, Your Honor. So it's clear that not every crime under 371 qualifies. Why this one in your view? It's clear that not everyone qualifies. And before I get to that question, Your Honor, I would just note that our position is that because of the ineffective assistance of counsel claim, because the petitioner didn't comply with Lazada, we don't even really reach whether this was a crime involving moral turpitude. And in the opening brief, the petitioner doesn't state why it's not a crime involving moral turpitude. Well, I'm asking you now why it is, so I'd like you to— Well, in the Goldstein case, as I recall, the court held that it was not a crime involving moral turpitude because under the categorical analysis, it was neither a crime where the statute showed an element of intent to defraud nor the nature of the crime itself, looking at the conviction documents, indicated that it was a fraud type of act or an element of intent to defraud. But in this case, we have the statutory language of 18 U.S.C. 371 that states that any person who conspires either to commit an offense against the United States or to defraud, it's in the very language of the statute, as well as the nature of the offense for which the petitioner was convicted. The indictment states that the petitioner and her co-conspirators did knowingly and intentionally, there's the element of intent, combine, confederate, and agree together to defraud, again defraud, the Immigration and Naturalization Service by conspiring to impair, obstruct, and defeat the lawful functions of the United States. Let me—I understand your answer, and I would like to go back to the matter of Lozada issue. Our court has held at least three times that I'm aware of that the requirements of Lozada are not sacrosanct. I think we said in one case, or rigidly applied, we may have said in another. Based on our case law, what, in your view, is the common thread in those cases? How do we know whether we have one in which the requirements must rigidly appear in the record and when we don't? Well, I believe Your Honor is speaking with respect to the two cases that petitioners cited, Castillo-Perez and Rodriguez, where the court found that the petitioner substantially complied with the requirements of Lozada. And this case is distinguishable because in that case the common thread was that the petitioner at least tried to meet some of the three requirements in Lozada, filing an affidavit or filing a state bar complaint and having—notifying the counsel and giving counsel an opportunity to respond. And also in those two cases, in Castillo-Perez and Rodriguez, the court found that it was apparent on the face of the record that there was an effective assistance of counsel. And in those two cases, specifically, the petitioner's counsel failed to file an application for suspension of removal. And the court found that the petitioner was denied his due process rights, and because of the constitutional violation, which was apparent and very clear on the face of the record, that the petitioner need not comply with Lozada or substantially comply with Lozada. But in this case, we don't have that at all. We have a petitioner who didn't meet any one of the requirements, although she stated in her reply brief to the board that she attempted to meet one of the requirements, filing a complaint with a Hawaii bar. There's no evidence in the record that she's admitted an argument that that existed. She hasn't met any of those requirements. She didn't substantially comply. This is not a case where her attorney failed to file a suspension application or any other form of relief. And it's not apparent on the face of the record that her counsel was ineffective. He did a really lousy job. I don't know what it means to be clear on the face of the record, but it seems like he didn't do a very good job. Well, the problem, Your Honor, with not filing specifically the affidavit as required under matter of Lozada, is we don't know what reasons he had for doing what he did. There may be very good reasons. It's very speculative at this point. For the reason that he didn't file the asylum application until the day before the hearing, it may be that the petitioner herself failed to get the application filled and all the attachments and the evidence that was required of her to present her case. That's speculating, but that could be a very good reason. And it's interesting that there is no affidavit from the petitioner stating why these things occurred. Are you saying that if the threat in the other cases, and I've read them and I'm trying to sort this out too, that somehow the record shows, the record of the case, some sort of attempt to do a Lozada compliance. Sometimes they try to notify the counsel. The counsel won't answer. It just doesn't happen. But attempts are made, and it's in the record. In this record, if I understand you correctly from what I've read, there's nothing in the record other than assertion. Now, if we take the bare bones assertion or look at the record, are we lawyering then for the lawyer and trying to outguess his trial strategy unless we have the lawyer's response or some showing that we can't get the lawyer's response? Well, there may not always be the lawyer's response, but at least the lawyer has the opportunity to respond, and that in itself may be significant where the lawyer is notified but doesn't respond. Exactly. In other words, is it the Lozada thread that there's an attempt made to find out which side the lawyer or the petitioner has some sort of equities going here on what happened relative to the ineffective assistance? Here we don't know, as you say, because all we have is the assertion of the petitioner. If we accepted that and wrote an opinion on that today, then we could do away with Lozada, I think. Correct. Well, I'm still not quite sure I read the cases the way you do. In Castillo, at least, the court says that at the time of the first hearing, Castillo had failed to satisfy any of the formal requirements of Lozada. The person later did so, but by that time they'd already lost the case and Herrera had been passed. So I took this, at least in Castillo-Perez, to have allowed the claim to go forward in the absence of complying with any of the Lozada requirements. I understand your other distinction, but do you read the case differently? I do, Your Honor, because in that case the court held that Lozada is not required where there is such a clear violation. Okay, so we're back to the clarity of the violation. Right, which is in that case the court held that it was a clear violation not to file a suspension application, an application for relief, when there's no possible reason, no benefit to not filing an application for relief and it wasn't filed, there can be no explanation. So it appears that what the court was saying is, even with speculating, even if we had the petitioner's affidavit and we had a response from counsel, there can't be any good reason for not filing a suspension application. In a case like that where you failed to file the application at all, isn't that nearly malpractice per se? It seems to be, and certainly the court held that it was a due process violation where the petitioner wasn't afforded a fair hearing because she wasn't afforded the opportunity to present some relief, which she probably was entitled to, and I believe the case found that she probably would have been eligible for suspension. Now, in this case, in the initial motion to remand or motion to reopen, there was a procedural error made, correct? There was no application for an adjustment of status. That's right. Okay. So again, there's a procedural failure there, right? Absolutely, yes. Okay. This is kind of, I'm going to switch gears on you a little bit. I am aware that some other panels of our court have suggested mediation when it's clear that the alien may be entitled to adjustment of status on the basis of marriage or other family circumstances, but for some reason the timing was off or the paperwork didn't get done properly, that sort of thing. Is that something that the government is willing to entertain in this case or in any of the other cases that are before us? Well, that's something I can't commit to at this point, Your Honor. Saying whether we would be, I'd have to check with the client, the agency, the Immigration and Naturalization Service or DHS at this point, to determine if they'd be willing to enter into negotiations on that point. I take it there's no doubt in your client's mind, though, that this person is actually legitimately married to her husband. There is no evidence to suggest that she's not married, no. What do we do with Judge Bybee's thought about the discretionary, how do we balance the fact that the IJ found that given all the conviction of the crime so far, as we know it, as is in the record, that there would be no discretion exercise, how do we balance that then with the adjustment of status? That's a very good question. Actually, the immigration judge found that she wouldn't exercise her discretion to give this person asylum, even if the person was statutorily eligible for asylum. In the same vein, we can assume that perhaps the Board of Immigration Appeals, let's see if my time is up, may I? Please answer. We would assume that the Board of Immigration Appeals, as the INS Council argued in its opposition to the petitioner's motion to reopen, would exercise the same discretion and find that even though statutorily eligible, it would not exercise discretion favorably. And then Congress, by enacting that exclusionary condition, then throws us into this box because if the discretion is not being exercised, and if we don't look at the record ourselves and say there was something wrong and ignore it, it looks like she has no relief whatsoever because of what Congress set up. Is that correct? That's correct, Your Honor, yes. Are there no further questions? Thank you very much. The respondent would respectfully request that the Court deny the petition for review. Thank you, Counsel. Ms. Hirota, you have some time left for rebuttal. Thank you, Your Honor. I'd like to get to the third point that I was going to make since that was our most important point, which is that as you point out, the respondent or the petitioner is married to a United States citizen. At the time of the initial hearing, he was not a U.S. citizen but a permanent resident. In 1998, he naturalized, and we had an approved visa petition filed by him on petitioner's behalf. That was submitted to the Board of Immigration Appeals, that approved visa petition, and that serves as prima facie evidence that she's eligible to adjust her status. Now, when the Board denied her petition, her motion to remand, they said, well, you haven't shown prima facie eligibility for relief. But, in fact, she did. She has an approved visa petition. It shouldn't come to any surprise to the government where she was married to the same man and had two children with him at the time of the initial hearing. It's just that that form of relief wasn't available to her at that time. How do you answer my concern about the excludability because of the conviction? How do we balance that? Well, Congress also did provide a mechanism for a waiver where the petitioner is married to a U.S. citizen and has U.S. citizen children. If she can show extreme hardship to those qualifying relatives, a waiver is available to her. Now, that wasn't filed, though, with the petition to remand. Well, the actual form, the application form, wasn't filed. But if you've ever seen the application form, it contains far less evidence than is already in the record. I mean, that requirement to file those forms has been waived by the Board in precedent cases. So it's an empty requirement. And, in fact, this court, the Board of Immigration Appeals doesn't even have jurisdiction over that form in the original, in the first instance. They have to remand it to the judge for her to consider. And so this court, the Ninth Circuit, has ruled very recently that immigration regulations are invalid where it negates the intent of Congress. And the case I'm thinking about is the v. visa aging out provisions that was recently issued last month. And, similarly, in this case, requiring respondents to submit just immigration forms that don't even need to be feed in is an empty requirement where she's already shown that she's prima facie eligible for relief. But given her conviction, she's probably not a particularly good candidate for a waiver, is she? Well, actually, I disagree with that, Your Honor. Her conviction was in 1996. It's now been eight years. She was given two years probation, which she completed. And she has no other criminal violations since then. So it is her one and only conviction. It's also been six years since the judge said that she would exercise her discretion against the petitioner. But in those six years, she's continued to accrue equities. And, in fact, the court said that she had outstanding equities, and those have only gotten stronger. Thank you, counsel. The case just argued is submitted. And we appreciate the arguments of both parties. The next case that we'll hear on the argument calendar this morning is United States v. Court Guard. And counsel may begin whenever you are ready. Good morning.
judges: Brunetti, Graber, Bybee